UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KELLY FAGIN, and
CARLA BROSHEAR,

        Plaintiffs

    v.                               Case No. 1:10-cv-75-HJW

OXFORD OB/GYN,

        Defendant

## ORDER

This matter is before the Court upon the defendant's motion for summary judgment (doc. no. 16), which plaintiffs oppose. Defendant filed proposed findings of fact and conclusions of law (doc. no. 17). Plaintiffs have not filed a highlighted version, despite ample time to do so.[1] Having carefully considered the entire record, including the parties' briefs (doc. nos. 16, 18, 23) and exhibits, the Court will **grant** the defendant's motion for summary judgment for the following reasons:

### I. Background and Factual Allegations

Oxford OB/GYN is a small medical practice with six to seven administrative employees who cover four offices. In their complaint, plaintiffs indicate that Oxford OB/GYN employed Kelly Fagin as a phlebotomist from January 1, 2006, until October 24, 2008; and employed Carla Broshear as a receptionist/clerk from February 12,

---

[1] The Court's Scheduling Order (doc. no. 8) instructs the opposing party to highlight the proposed findings of fact and conclusion of law in order to show what matters are disputed, agreed upon, or considered irrelevant.

2007, until July 29, 2008 (doc. no. 1, ¶ 8). Plaintiffs worked under the direction of office manager Shelly Tulley and four physicians, including Dr. Daniel Stein, M.D.

In the complaint, plaintiff Fagin alleges that after Dr. Stein joined the practice in 2007, he began engaging her in conversation, occasionally touched her shoulder or hair, sent her email stories, and once swatted her on the buttocks with his clipboard. Fagin alleges that, at some unspecified time, she showed several emails containing off-color jokes from Dr. Stein to the office manager (Ms. Tulley), who reportedly found them humorous (¶ 13). According to Fagin, the behavior continued for a month or so (¶ 14). The complaint alleges that in mid-July of 2008, Fagin and Broshear discussed the possibility that she could bring an EEOC charge (¶ 15). Plaintiffs allege that this conversation occurred in the presence of a co-worker, Connie Parsifal, who allegedly reported it to the office manager (¶ 15). Plaintiffs indicate that at some point thereafter, Dr. Stein stopped sending Fagin emails, quit visiting her work station, and did not engage her in any conversation "other than absolutely necessary to perform his work" (¶ 16).

In the complaint, plaintiffs acknowledge that Broshear missed an entire day of work when she returned late from her vacation and that her employment was then terminated on July 29, 2008 (¶ 17). The complaint also indicates that several months later, Fagin admittedly "missed work" to stay home with her adult daughter and was then terminated (¶ 17).[2] Defendant explains that Fagin admittedly took a 2.5 hour

---

[2]Although paragraph 17 of the complaint indicates that Fagin was fired on September 10, 2008, that date appears to be erroneous. The complaint elsewhere indicates Fagin was fired on October 24, 2008 (¶ 8), and defendant confirms this.

lunch without permission (doc. no. 23 at 15, citing Fagin Dep. 83). Plaintiffs contend that they were fired in retaliation for their previous discussion about "incidents of sexual harassment" (¶ 23, 26). Defendants contend that plaintiffs were both fired for missing work after being warned about their ongoing attendance and tardiness problems.

After being fired, Fagin and Broshear filed EEOC charges in 2009 (¶ 18). On February 8, 2010, they filed this three-count federal lawsuit against their former employer. In Counts One and Two, plaintiff Fagin alleges sex harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (¶¶ 19-24). The complaint contains a third count, which is mislabeled as another Count Two. In this third count, plaintiff Broshear alleges retaliation under Title VII (¶¶ 25-27). The plaintiffs seek compensatory damages, attorney fees, and punitive damages in the amount of five hundred thousand dollars ($500,000.00).

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Amended Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> **(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or**
>
> **(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).**

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. <u>Id</u>. at 587. In reviewing a motion for summary judgment, a court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 251-52 (1986).

<u>III. Issues Presented</u>

In determining whether defendant is entitled to summary judgment, the main issues before the Court are: 1) whether Fagin has presented a prima facie case of sexual harassment under Title VII, and 2) whether Fagin and Broshear have presented a prima facie case of retaliation under Title VII.

<u>IV. Analysis</u>

<u>A. Sexual Harassment Claim</u>

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of sex. 42 U.S.C. §§ 2000e, et seq. Plaintiff Kelly Fagin has alleged a

claim of sexual harassment based on hostile work environment under Title VII against her former employer.

In order to establish a prima facie case of sexual harassment based on hostile work environment, plaintiff must establish that (1) she was subjected to unwelcome sexual harassment; (2) the conduct was directed at her because of her sex; (3) the harassment was sufficiently severe or pervasive to affect the terms and conditions of employment (i.e, the harassment created a hostile work environment); and (4) there is a basis for employer liability. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Ladd v. Grand Trunk Western Railroad, Inc., 552 F.3d 495, 500 (6th Cir. 2009); Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 270 (6th Cir. 2009).[3]

To prevail, a plaintiff claiming sexual harassment must establish that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21; Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000). The harassing behavior must be "severe or pervasive" enough to create an environment that a reasonable person would find objectively hostile or abusive, and that she subjectively regarded the environment as abusive. Harris, 510 U.S. at 21-22. Among the relevant factors to be considered are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether

---

[3]The parties do not dispute that plaintiff, as a female, is a member of a protected class.

it unreasonably interferes with an employee's work performance." <u>Clark v. United Parcel Serv., Inc</u>., 400 F.3d 341, 351 (6th Cir. 2005) (quoting <u>Harris</u>, 510 U.S. at 23).

Here, the alleged behavior consisted only of occasional teasing and relatively innocuous banter that were not sufficiently severe to justify a finding of a hostile work environment. Indeed, defendant has submitted emails into evidence reflecting that plaintiff Fagin herself engaged in much boisterous (and at times, openly disrespectful) language and sexual innuendo at the workplace (see e.g., doc. no. 17 at ¶ ¶ 68-72, 75). Although plaintiff Fagin now complains about Dr. Stein's behavior, the record amply reflects that she herself continued to engage in similar antics at the office. Fagin did not inform Dr. Stein or Tulley that she found any emails or behavior "unwelcome," nor did she did indicate to Tulley that she felt Dr. Stein was being inappropriate in sending the emails (doc. no. 14, Fagin Dep. 32-34). Given her own ongoing participation in crude language, mutual jokes, and emails, she can hardly claim that the alleged workplace comments and behavior by Dr. Stein, even when considered cumulatively, were offensive to the degree now alleged. The alleged conduct was certainly not "physically threatening or humiliating."

Even assuming that the attention from Dr. Stein at some point did become "unwelcome," the overall conduct complained of by Fagin simply was not severe enough to rise to the level of sexual harassment that would result in a hostile work environment. The case law amply supports this contention. Defendant cites numerous cases where dismissal was found appropriate, even where the facts were far more egregious than the present case. The work environment about which Fagin

complains falls quite short of the environments that courts have found to rise to the level of actionable gender-based hostile work environments.

"[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The alleged conduct can comfortably be described as simple teasing, offhand comments, and isolated incidents, which is not actionable conduct under Title VII. Construing the evidence in the light most favorable to plaintiff, the alleged conduct does not rise to the level of an actionable gender-based hostile work environment. The United States Supreme Court has emphasized that Title VII is not a general civility code. Id. at 788 ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' "); Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998) (same).

This standard is designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher, 524 U.S. at 788. Given that Fagin herself continued to participate in innuendo and office banter (which she describes overall as "lighthearted"), she has not shown that she subjectively regarded her work environment as "abusive," much less that the alleged incidents would result in a work environment that a reasonable person would consider objectively "abusive." Harris, 510 U.S. at 21-22.

Although she complains of attention, such as some mutual joking emails and

a swat on the butt on two occasions over the course of a year, the overall conduct complained of simply does not amount to "discriminatory changes in the terms or conditions of employment." Bowman, 220 F.3d at 463; and see, e.g., Valentine-Johnson v. Roche, 386 F.3d 800, 814 (6th Cir. 2004) (holding that alleged "touching" was not frequent, severe, physically threatening, or humiliating, and did not arise to the level of a "hostile work environment"); Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir. 2004) (finding that a mere playful swat on the butt and other similar conduct amounted only to 'simple teasing' that did not create an abusive working environment); Adusumilli v. City of Chicago, 164 F.3d 353 (7th Cir. 1998) (same). In fact, Fagin herself indicates she "let the matter drop" (doc. no. 18, ¶ 26, citing Fagin Dep. at 41, lines 3-8; Fagin Aff. at ¶ 12). At deposition, Fagin acknowledged that she never reported any of the alleged incidents she now complains of to management (doc. no. 23 at 5-6, citing Fagin Dep. 32-34, 38, 40, 43). Defendant points out that it had a written anti-harassment policy and that Fagin never advised management of any "harassment."

The evidence also indicates that none of the allegedly harassing behavior unreasonably interfered with her work performance (doc. no. 23 at 6, citing Fagin Dep. 44-45). Incredibly, plaintiff Fagin complains that Dr. Stein *ceased* the alleged behavior (see doc. no. 18 at 15, alleging he became "colder and more formal") and that *this* made her job more difficult. Plaintiff's argument misses the mark, and in any event, her allegation is entirely conclusory and unsupported. For all these reasons, Fagin has failed to make a prima facie case, and thus, summary judgment

is appropriate on Count One.

**B. Retaliation Claims**

Both plaintiffs allege retaliation pursuant to Title VII, at Section § 2000e-3(a), which provides in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiffs bring their claims under the "opposition" prong.

Where, as here, plaintiffs have no direct evidence of retaliation, they must rely on the burden shifting test articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), as refined by <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). To prove a prima facie case of retaliation under Title VII, a plaintiff must prove that (1) she engaged in activity protected by Title VII; (2) defendant was aware of the protected activity; (3) defendant thereafter took an adverse employment action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. <u>Garner v. Cuyahoga Cnty. Juvenile Court</u>, 554 F.3d 624, 639 (6th Cir. 2009); <u>Hunter v. Sec'y of U.S. Army</u>, 565 F.3d 986, 995-96 (6th Cir. 2009).

If plaintiffs make a prima facie showing, the burden shifts to the employer to articulate some "legitimate, nondiscriminatory reason" for the adverse actions. <u>McDonnell Douglas</u>, 411 U.S. at 802. If the employer satisfies this burden, the

burden of production shifts back to plaintiffs to show that the proffered legitimate reasons are pretextual. <u>Burdine</u>, 450 U.S. at 256. Although the burden of production shifts between the parties, the burden of persuasion remains with plaintiffs throughout. <u>Ladd</u>, 552 F.3d at 502.

Here, plaintiffs have failed to make a prima facie showing at several steps. Plaintiffs have not shown that they "engaged in protected activity." Neither plaintiff made a complaint or filed a charge with the EEOC prior to their terminations. The record establishes that plaintiffs did not go to the EEOC until *after* they were terminated (doc. no. 15, Broshear Dep. at 71-72). To the extent Fagin alleges that she complained to the office manager about Dr. Stein's behavior (doc. no. 1 at ¶ 13), defendant points to Fagin's own deposition testimony where she acknowledged that she did <u>*not*</u> actually express any complaints to the office manager about any behavior by Dr. Stein (doc. no. 17 at ¶ 77, citing Fagin Dep. 40, 43, 44). While complaints to management may constitute protected activity under Title VII, *see* <u>Crawford v. Metropolitan Government of Nashville and Davidson</u>, 555 U.S. 271, 129 S.Ct. 846, 851 (2009), Fagin has acknowledged that she never actually complained to management.

Plaintiffs make the unsupported allegation that a co-worker (Connie Parsifal) overheard plaintiffs' conversation about sexual harassment and then reported the conversation to the office manager. This falls quite short of the requisite showing of engaging in protected "opposition" activity. Moreover, defendant points out that 1) Connie Parsifal indicates she did *not* overhear, much less inform her supervisor,

about any such conversation (doc. no. 16-1 at 1, Parsifal Decl. at ¶¶ 3-4), and 2) Tulley indicates that no one ever reported the plaintiffs' alleged conversation or any complaints of inappropriate behavior to her (doc. no. 16-2, Tulley Decl. ¶¶ 3, 25-26). Plaintiffs may not rely on unsupported speculation to avoid summary judgment. Plaintiffs have not shown that they actually "opposed" any unlawful employment practice.

Furthermore, plaintiffs have not shown any causal connection between their purported "protected activity" and their terminations in July 2008 and October 2008. <u>Hunter</u>, 565 F.3d at 995-96; <u>Morris v. Oldham County Fiscal Court</u>, 201 F.3d 784, 792 (6th Cir. 2000)). The evidence must be sufficient to raise an inference that the protected activity was the likely reason for their respective terminations. <u>Wade v. Knoxville Utils. Bd.</u>, 259 F.3d 452, 463 (6th Cir. 2001). Plaintiffs have not shown that the defendant was even aware of any alleged protected activity or harassment. The notion of temporal proximity does not support any reasonable inference of causal connection here, as the plaintiffs were fired at different times (several months apart) and only after plaintiffs both took significant unexcused absences from work (see doc. no. 18-2 at ¶¶ 17-18, 25-27).

Moreover, defendant has articulated legitimate non-discriminatory reasons for their terminations, namely, the acknowledged fact that both plaintiffs had skipped work without prior approval. Plaintiffs' contention that they could "make up" the hours later is unavailing. Defendant explains that both plaintiffs had a history of poor attendance, leaving early, taking excessive breaks, and tardiness, and that this

was discussed with both plaintiffs on various occasions to no avail. For example, Fagin's evaluation on February 13, 2008 indicated that she needed to improve her "attendance and punctuality" (doc. no. 18-2 at 13). Fagin admits she received a written warning on September 30, 2008 (Id. at ¶ 27) which indicated that no more tardies or absences would be tolerated and that the "next incident would result in termination" (Id. at 14). Broshear's evaluation on March 17, 2008 noted that she had six incidents of leaving early or taking personal days in her first three months of employment and that this was "expected to improve" (Id. at 27).

Defendant indicates that, although these issues were raised in both plaintiffs' written evaluations (doc. no. 18-2 at 9-14, 27-30), their attendance problems persisted, culminating in their respective terminations. Defendant points out that it is undisputed that in July of 2008, Broshear did not show up for work for an entire day (doc. no. 23, citing Broshear Dep. 65). Similarly, Fagin was fired after she took an unapproved two-and-a-half hour lunch, only one week after being given a "final" warning regarding attendance issues (Id., citing Fagin Dep. 83; doc. no. 17 at 6, ¶¶ 48-54, citing Fagin Dep. 83 and Exs. 10-12). Defendant has articulated legitimate non-discriminatory reasons for firing both plaintiffs.

The burden then shifts to plaintiffs to show "pretext." To do so, plaintiffs must produce evidence that the defendant's proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action. Upshaw v. Ford Motor Co., 576 F.3d 576, 586 (6th Cir. 2009); Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084

(6th Cir. 1994), overruled on other grounds, Geiger v. Tower Automotive, 579 F.3d 614 (6th Cir. 2009). Both plaintiffs acknowledge that they missed work without approval. Their attendance problems provided a "basis in fact" that was sufficient to warrant their terminations. Plaintiffs' contention that their failure to show up for work "did not actually motivate the adverse employment action" is self-serving and unsupported. Plaintiffs have failed to produce evidence sufficient to withstand summary judgment.

Plaintiffs spend much of their brief attempting to argue that their attendance problems were not as bad as the time records actually indicate. However, plaintiffs' allegation that they sometimes started work before clocking in, but were not actually "late" despite the time records, does not establish that the defendant's reasons for terminating their employment were pretextual. Plaintiffs acknowledge that they actually were late on various occasions and that their evaluations specifically mentioned attendance problems. Although plaintiffs speculate that time records may have been "altered" by Tulley, defendant explains in detail how this allegation is based on plaintiffs' own misunderstanding of the respective time and pay records. Although courts must draw all permissible inferences in favor of the nonmoving party to the extent supportable by the record, courts are not obligated to draw unreasonable inferences in a plaintiff's favor. Scott v. Harris, 550 U.S. 372, 381 n. 8 (2007); and see, e.g., Grubb v. YSK Corp., Slip Copy, 2010 WL 4807079, *5 (6th Cir. (Ohio)).

Plaintiffs' annual evaluations indicated attendance problems, including

tardiness and excessive smoking breaks. Their employer was well within its rights to insist that employees actually show up for work, particularly since personal service and timely appointments for its clientele were crucial to its business. The reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998) (holding that courts should inquire into "whether the employer made a reasonably informed and considered decision before taking an adverse employment action").

An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. Allen v. Highlands Hosp. Corp., 545 F.3d 387, 398 (6th Cir. 2008) (quoting Michael v. Caterpillar Financial Services Corp., 496 F.3d 584 (6th Cir. 2007)). "The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action." Id. Here, the defendant made an informed decision that termination was warranted when plaintiffs missed work. Plaintiffs have not shown that the defendant's articulated reasons are pretextual. Plaintiffs have failed to carry their ultimate burden of persuasion on their retaliation claims.

V. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The Court finds that the pleadings and exhibits are clear

on their face and that oral argument is not warranted here.

Accordingly, the defendant's motion for summary judgment (doc. no. 16) is GRANTED; this case is DISMISSED and TERMINATED on the docket of this Court; costs shall be  born by plaintiffs.

IT IS SO ORDERED.


                                              <u>Herman J. Weber</u>
                                              Herman J. Weber, Senior Judge
                                              United States District Court